# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **THOMAS JASON CLEMENTS,** | ) | **CASE NO. 1:12 CV 1180** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **v.** | ) | |
| | ) | <u>**OPINION AND ORDER**</u> |
| **BRIMFIELD TOWNSHIP,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J.:**</u>

*Pro se* Plaintiff Thomas Jason Clements filed this action under 42 U.S.C. § 1983 against

Brimfield Township, the Brimfield Township Police Department, Brimfield Police Chief David

Oliver, Brimfield Police Sergeant Matthew McCarty, Brimfield Police Officer William Atha,

Brimfield Police Officer Jerry Dumont, Brimfield Police Officer John Pettit and former

girlfriend Cheri Ann Kuss.  In the Complaint, Plaintiff asserts numerous claims arising from two

incidents in which Brimfield Police were summoned by Ms. Kuss.  He seeks monetary damages.

## I.  BACKGROUND

Plaintiff alleges Ms. Kuss was his girlfriend from April 2000 until June 2010.  He

contends they lived together for eight of the ten years they were together.  He states they began

renting a home on Edson Road in Brimfield Township on April 19, 2010.  He indicates there was no rental agreement or lease, but they maintained a verbal understanding with the landlord.

Brimfield police were first summoned to the Edson Road property on June 1, 2010. Plaintiff alleges he had been trying to balance the couple's bills and decided to cancel their cable service.  He contends Ms. Kuss arrived home that night to discover that the cable box was missing.  She telephoned the police and claimed Plaintiff broke into the residence using a spare key and stole the cable box.  Officers Atha and Dumont responded to the call.  Plaintiff contends he attempted to prove to the officers that he lived at the home with Ms. Kuss and produced copies of utility bills in his name.  He also reported that the spare key he used was, in fact, his house key.  He claimed Ms. Kuss was lying because she was upset that he had terminated their cable service.  Ms. Kuss admitted that the cable service had been in Plaintiff's name but still maintained that they were estranged.  Plaintiff claims the officers would not allow him to go into the home, even to retrieve his belongings, and confiscated his key.  They told him if he came back to the house that night he would be arrested.

Plaintiff nevertheless returned to the home on June 7, 2010.  Police were again summoned to the home at 1:00 a.m. on the report that a stabbing had occurred at the residence. Ms. Kuss reported that Plaintiff had kicked in the door of the residence armed with a knife, and took her cell phone from her.  She said she struggled with him and he stabbed her in the arm. She contended that he eventually allowed her to call the Brimfield Fire Department for medical attention.  The paramedics responded along with Officers Atha and Dumont.  Plaintiff was arrested  and charged with one count of Aggravated Burglary, and one count of Felonious Assault.  The grand jury returned an indictment against him on June 10, 2010, on charges of

Aggravated Burglary, Felonious Assault, Kidnaping, and Disrupting Public Services.  *See State of Ohio v. Clements*, No. 2010 CR 367 (Portage Cty Comm. Pl. filed June 10, 2010).[1]  Plaintiff maintains he could not be charged with burglary because he resided in the home with Ms. Kuss.

Ms. Kuss obtained an *Ex Parte* Temporary Protection Order ("TPO") on June 8, 2010. He was arrested on June 28, 2010 for violating the terms of that protection order.  He disputes that protection order was properly obtained and contends he was unjustly arrested.  On July 1, 2010, the grand jury returned an indictment against him on one count of Violating a Protection Order, two counts of Menacing by Stalking, and one count of Intimidation.  *See State of Ohio v. Clements*, No. 2010 CR 0409 (Portage Cty Comm. Pl. filed July 1, 2010).

To resolve both criminal cases, Plaintiff entered into a plea agreement with the prosecution.  He pled guilty to the charges of Burglary and Felonious Assault in Case No. 2010 CR 0367, and to one count of Menacing by Stalking in Case No. 2010 CR 0409.  In exchange for his plea on these charges, the State dropped all of the other charges pending against him in these two indictments.  He was sentenced to three years incarceration and three years of supervised release.  He was given credit for 108 days of jail time.  He filed a Motion for Judicial Release on March 14, 2012.  That Motion was granted on June 12, 2012.

In his Complaint, Plaintiff asserts fifteen counts for relief.  Seven of the counts concern the incident that occurred on June 1, 2010.  In Count One, he asserts that Officers Atha and Dumont evicted him from his home without a court order, thereby denying him due process.  In Count Two, he contends that these officers refused him access to his home in violation of the

---

[1]   Portage County Court of Common Pleas dockets can be view at http://www.co.portage.oh.us/courtsearch.htm

-3-

Fourth Amendment.  In Count Three, he alleges the Officers seized his house key in violation of the Fourth Amendment.  In Count Four, Plaintiff alleges the officers effectively seized his personal property in the home by refusing to allow him to have access to it, in violation of the Fourth Amendment.  He claims in Count Five that he complained to Chief Oliver and sought permission to return to the home, but the Chief denied his request.  He claims Chief Oliver ratified the constitutional violations of Officers Atha and Dumont.  Plaintiff asserts in Count Seven that Ms. Kuss converted his personal property.  Finally, in Count Nine, Plaintiff alleges Officers Atha and Dumont, abused police power to evict him.

Three of the counts for relief pertain to the June 7, 2010 incident.  In Count Six, Plaintiff claims Officer Atha violated his Fourth Amendment rights by arresting him for burglary. Plaintiff contends he could not be charged with burglary because he lived in the home.  He also includes claims for Wrongful Imprisonment, and False Arrest asserting that the Officer lacked probable cause for the arrest.  In Count Eight, Plaintiff again asserts Officers Atha and Dumont could not arrest him for burglary when he lived in the home, and claims they engaged in malicious prosecution in violation of the Fourth Amendment.  Plaintiff claims in Count Thirteen that the Officer Atha and Ms. Kuss knew each other from high school and, therefore, conspired to have him arrested.

Three of the counts for relief pertain to the Temporary Protection Order ("TPO") that was granted to Ms. Kuss on June 8, 2010.  Plaintiff claims in Count Ten the TPO was legally infirm because it was obtained *ex parte*.  He asserts that this resulted in new criminal charges being brought against him for violating the terms of the TPO.  He asserts a claim for Malicious Use of Process.  In Count Eleven, Plaintiff claims that a hearing was supposed to be held on the

-4-

TPO within ten days after the TPO was granted.  He claims the hearing did not take place within ten days; however, the order remained in effect after his arrest on June 28, 2010.  He claims in Count Twelve that Sergeant McCarthy stated he witnessed Plaintiff following Ms. Kuss in violation of the TPO.  Plaintiff claims this information is false.  He further states that Officer Pettit wrote the police report that contained the information from Sergeant McCarthy.  He asserts claims of Malicious Prosecution against both of these officers.

Finally, the last two counts of the Complaint express general causes of action against the Brimfield Police Department and Brimfield Township.  In Count Fourteen, Plaintiff alleges the Brimfield Police Department failed to adequately train their officers and supervisors in the department failed to correct the behavior of their subordinates.  In Count Fifteen, Plaintiff alleges that the Brimfield Police Department needs to have better policies in place which would have prevented the officers from violating his constitutional rights.

## II.  LAW AND ANALYSIS

### Standard of Review

While *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court may dismiss an action *sua sponte* if the Complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction.  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(*citing Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)).  *Sua sponte* dismissal is also appropriate if the claims lack "legal plausibility necessary to invoke federal subject matter jurisdiction."  *Apple*, 183 F.3d at 480.

-5-

**June 1, 2010 incident**

With respect the first incident in which police were summoned to the home on Edson Road on June 1, 2010, Plaintiff asserts claims against Officers Atha and Dumont for denial of procedural due process in violation of the Fourteenth Amendment and unreasonable seizure of property in violation of the Fourth Amendment. He also asserts these claims against Chief Oliver for refusing to allow him to return to the home.

**Due Process**

The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id*.

The Due Process Clause has a procedural component and a substantive one. The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision. *Howard v. Grinage*, 82 F.3d 1343, 1349 -1353 (6th Cir. 1996). The goal is to minimize the risk of erroneous deprivation, to

-6-

assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process.  *Id*.  Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner."  *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir.1983).  Many procedural due process claims are grounded on violations of state-created rights, or rights that do not enjoy constitutional standing.  *See Id.*  The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right is to prevent  the arbitrary use of government power.  *Howard*,  82 F.3d at 1349.  Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient.  *Howard*,  82 F.3d at 1350.  Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used.  *See Daniels v. Williams*, 474 U.S. 327, 331 (1986).  Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action.  *Id*.  It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscious," as to rise to the level of a constitutional violation.  *Howard*,  82 F.3d at 1349.

**Procedural Due Process**

Plaintiff claims in Count One that Officers Atha and Dumont evicted him without a court order in violation of the Fourteenth Amendment.  An individual has "a clearly established right not to have property in which [he or she] enjoyed a lawful possessory interest seized by state action in violation of the constitution."  *See Haverstick Enterprises, Inc. v. Financial Fed'l Credit, Inc.*, 32 F.3d 989, 994 (6th Cir.1994).  More specifically, "a possessory interest in property invokes procedural due process, which would require adequate notice and a meaningful hearing prior to any attempt to deprive the interest holder of any rights."  *Hamby v. Neel*, 368 F.3d 549, 560 (6th Cir.2004).

The Sixth Circuit considered a similar scenario in *Turner v. City of Taylor*, 412 F.3d 629 (6th Cir.2005).  In *Turner*, the Sixth Circuit reversed a district court's grant of summary judgment to a police officer accused of constructively evicting the plaintiff-appellant.  *Id*. at 652.  The plaintiff had been arrested for domestic violence and assault and battery against his live-in girlfriend and was later released from jail without an arraignment.  *Id*. at 633.  The plaintiff alleged that when he returned home, two police officers confronted him and ordered him to leave his house or face arrest.  *Id*. at 644.  He then called the local police department and spoke with a supervising officer, who also told him that he would go to jail if he did not leave his house.  *Id*. at 645.  The Sixth Circuit found that "[s]uch police action arguably was ... a denial of due process in violation of the Fourteenth Amendment."  *Id*. at 644.

Likewise, in *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir.2002), the Sixth Circuit held that four police officers violated the plaintiffs' due process rights under the Fourteenth Amendment by evicting them from a shelter without a judicial order.  *Id.*  In *Thomas*, the

-8-

director of the shelter called the police to have the plaintiff-tenants, with whom she was having a dispute, removed from the shelter.  *Id*. at 566.  When the police arrived, they entered the plaintiffs' rooms and told them they had to leave the shelter immediately.  *Id*. at 567.  The officers did not physically confront the plaintiffs, but they did order the plaintiffs to leave before they could gather all their belongings. *Id*.  The Sixth Circuit stated that the plaintiffs had a possessory interest in their property that "invoke[d] procedural due process protections," including "notice and a hearing prior to eviction."  *Id*. at 576.  The Sixth Circuit held that, without such, the plaintiffs' eviction "constituted a violation of their clearly established Fourteenth Amendment rights."  *Id*. at 582.

Here, there is a factual question concerning whether Plaintiff was living in the home on Edson Road on June 1, 2010.  He indicates there was no written rental agreement.  He and Ms. Kuss occupied the residence under an oral contract.  He produced utility bills demonstrating that they were in his name.  The address on the utility bills is the Edson Road property.  At the pleading stage of litigation, Plaintiff need only allege sufficient facts to suggest he has a plausible legal claim against the Defendants.  The facts set forth in the Complaint are adequate to avoid summary dismissal under 28 U.S.C. § 1915(e) for his procedural due process claim in Count One against Officers Atha, and Dumont pertaining to the June 1, 2010 incident.

**Substantive Due Process**

Plaintiff also claims in Count Nine that Officers Atha and Dumont "abused police powers" to evict him.  The Court liberally construes this as an attempt to assert a denial of substantive due process.

Substantive due process focuses on the egregiousness of the deprivation itself, regardless

of the procedure given prior to or after the deprivation.  It concerns official acts that infringe on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscious," as to rise to the level of a constitutional violation.  *Howard*, 82 F.3d at 1349; *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993).  These actions are unconstitutional regardless of the procedural protections provided.  *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).  A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent.  *Id*. at 833.  The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."  *Id*.

Here, Plaintiff alleges his former girlfriend called police to tell them that he broke into her house and removed the cable box.  Plaintiff contends he produced copies of bills showing the utilities were in his name, but admitted there was no written lease or rental agreement with the property owner.  Ms. Kuss suggested to police that Plaintiff did not live there.  While Plaintiff claims the officers incorrectly believed Ms. Kuss and would not allow him to enter the residence, this behavior does not "shock the conscience" or appear "so severe and disproportionate to the need presented' that it transcends the boundries of ordinary tort law.  *Id.* Plaintiff's substantive due process claim is dismissed.

To the extent Plaintiff intended to assert a claim other than one for denial of substantive due process in Count Nine, he failed to do so.  Principles requiring generous construction of *pro se* pleadings are not without limits.  *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989);

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985).  A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements.  *See Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).  District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments.  *Beaudett*, 775 F.2d at 1278.  To do so would "require ...[the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Id.* at 1278.  Moreover, Plaintiff's failure to identify a particular legal theory in his Complaint places an unfair burden on the Defendants to speculate on the potential claims that Plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action.  *See Wells v. Brown*, 891 F.2d at 594.  Even liberally construed, the Court cannot reasonably identify a federal claim or claims, other than one for a denial of substantive due process, upon which Plaintiff intends to base count nine.

**Fourth Amendment Seizure of Property**

Counts Two, Three, and Four are essentially the same claim.  Plaintiff contends that the officers refused to allow him to enter the home, would not permit him to retrieve personal property he alleges was in the home, and confiscated the house key he was using to gain entry. He asserts this is a violation of the Fourth Amendment.

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, provides in pertinent part that the "right of the people to be secure in their persons, houses,

-11-

papers, and effects, against unreasonable searches and seizures, shall not be violated...."  U.S. Const. amend. IV.  This right applies with equal force in both the civil and criminal contexts. *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 539 (1967).  In *United States v. Jacobsen*, 466 U.S. 109, 113 (1984), the Supreme Court explained that the first clause of the Fourth Amendment "protects two types of expectations, one involving searches, the other seizures." A 'search' occurs when an expectation of privacy that society is prepared to consider is infringed, whereas a 'seizure' of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Id*.

The Supreme Court in *Soldal v. Cook County, Illinois*, 506 U.S. 56 (1992), also recognized that the participation of a police officer in an improper eviction constitutes a seizure in violation of the Fourth Amendment.  Although the officers had not entered *Soldal*'s house, rummaged through his possessions, nor interfered with his liberty in the course of the eviction, his Fourth Amendment rights were violated when the officers "dispossessed the Soldals of their trailer home by physically tearing it from its foundation and towing it to another lot." *Soldal*, 506 U.S. at 70.

The question before this Court  is whether a "seizure" of property within the meaning of the Fourth Amendment occurs when police officers force a tenant to vacate his residence. "When a governmental agent carries out an eviction without a court order and in the absence of any colorable legal authority, this question must be answered affirmatively." *Thomas*, 304 F.3d at 572.  When there is "some meaningful interference" with a tenant's possessory interest in his or her property, however brief, because a governmental agent removes a tenant from his or her home or apartment, the Fourth Amendment is implicated. *Jacobsen*, 466 U.S. at 113; *Thomas*,

-12-

304 F.3d at 572. The "meaningful interference" by governmental agents does not require the agents to physically seize the property in question. *Thomas*, 304 F.3d at 572. Rather, to constitute a seizure of property within the meaning of the Fourth Amendment, it is enough that the governmental agent's action amounted to "meaningful interference with an individual's possessory interests in that property." *Jacobsen*, 466 U.S. at 113. Escorting a tenant from his residence to effectuate an eviction, may satisfy the requirement of "meaningful interference" with his leasehold interest, if one existed, to constitute a seizure of property. *Thomas*, 304 F.3d at 572. Use of physical force by the officers is also not required to implicate the Fourth Amendment. *Id.* The police may effectuate an eviction by subtle threat of physical force of dire legal consequences should the tenant not comply with the officers' instructions to vacate the property. *Id.* Construing the pleading in the light most favorable to the Plaintiff, he has alleged sufficient facts to suggest that Fourth Amendment protections may have been implicated. *See Id.*; *Haverstick Enters., Inc. v. Fin. Federal Credit, Inc.*, 32 F.3d 989, 994 (6th Cir.1994).

The Fourth Amendment inquiry, however, does not end there. In order to be actionable, a seizure must also be objectively unreasonable. *See Soldal*, 506 U.S. at 71 (noting that "'reasonableness is still the ultimate standard' under the Fourth Amendment"). A determination of reasonableness requires a "careful balancing of governmental and private interests." *Id.* (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)). Under this standard, most eviction-type seizures will not be found unconstitutional. *Soldal*, 506 U.S. at 71; *Thomas*, 304 F.3d at 574. Nevertheless, at the pleading stage, Plaintiff has only to allege sufficient facts to suggest he has a plausible legal claim against the Defendants. The facts set forth in the Complaint are adequate to avoid summary dismissal under 28 U.S.C. § 1915(e) for his Fourth

Amendment claims set forth in Counts Two, Three, and Four against Officers Atha, and Dumont pertaining to the June 1, 2010 incident.

### Respondeat Superior

In Count Five of his Complaint, Plaintiff indicates he complained to Chief Oliver and sought permission to return to the home, but the Chief denied his request.  He contends that the Chief ratified the constitutional violations of Officers Atha and Dumont and is also liable.

"Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act."  *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)).  Rather, the supervisor must have actively engaged in unconstitutional behavior.  *Id.*  Liability, therefore, must lie upon more than a mere right to control employees and cannot rely on simple negligence.  *Id.*  It is apparent from the face of the pleading that Chief Oliver was not present at the Edson Road home on June 1, 2010 and did not directly participate in the decision to bar him from entering the home.  In order for liability to attach to Chief Oliver for the actions of Officers Atha and Dumont, Plaintiff must prove that he did more than play a passive role in the alleged violations or show mere tacit approval of the Officers' decision.  *Id*.  Plaintiff must show that the Chief somehow encouraged or condoned the actions of the Officers.  *Id.*; *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995).

Here, Plaintiff claims he went to the police station on June 2, 2010, and spoke to Chief Oliver.  He contends he requested admittance to the home and access to his personal property, but the Chief refused both requests.  Plaintiff contends the Chief ratified the actions of the officers.  The facts alleged in the Complaint are sufficient to suggest  plausible claims for relief

-14-

against Chief Oliver in Count Five for violations of the Fourth and Fourteenth Amendments in connection with the June 2, 2010 incident, to avoid summary dismissal under §1915(e).

**Conversion**

Plaintiff asserts in Count Seven that Ms. Kuss converted his personal property.  To the extent Plaintiff intends to assert this claim against Ms. Kuss under 42 U.S.C. § 1983, the claim must be dismissed.

To establish a prima facie case under 42 U.S.C. § 1983, Plaintiff must assert that a person acting under color of state law  deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally, to be considered to have acted "under color of state law," the person must be a state or local government official or employee.  Ms. Kuss is a private party, not a government actor. The principal inquiry undertaken in determining whether a private party's actions constitute "state action" under the Fourteenth Amendment to the United States Constitution is whether the party's actions may be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

The Supreme Court has established four tests for determining whether the challenged conduct may be fairly attributable to the State for purposes of a § 1983 claim. These are: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test. *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298, (2001); *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992).  Plaintiff has not alleged facts to suggest that Ms. Kuss's actions fit any of the criteria.

The public function test requires that the private entity exercise powers that are

-15-

traditionally exclusively reserved to the State, such as holding elections, *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978), or exercising the power of eminent domain. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974). Plaintiff alleges Ms. Kuss telephoned police and provided them with false information to have him removed from the home he contends they shared. These actions do not involve powers reserved exclusively to a state.

The state compulsion test requires that a State has "exercised such coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the State responsible for those initiatives. *Id*. Again, Plaintiff does not allege facts to suggest the State coerced Ms. Kuss into telephoning police and providing allegedly false information.

Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *See Jackson*, 419 U.S. at 357-58; *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 724-25 (1961). This test requires the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar*, 457 U.S. at 937. Private parties are not acting under color of state law merely by acting as complainants or witnesses in state criminal actions. *Grow v. Fisher*, 523 F.2d 875 (7th Cir. 1975); *see Briscoe v. La Hue*, 460 U.S. 325 (1983); *Hernandez v. Schwegmann Brothers Giant Supermarkets, Inc.*, 673 F.2d 771 (5th Cir. 1982); *Blevins v. Ford*, 572 F.2d 1336 (9th Cir. 1978).

-16-

Finally, the entwinement test requires that the private entity be "entwined with governmental policies" or that the government be "entwined in [the private entity's] management or control."  *Brentwood*, 531 U.S. at 296 (citing *Evans v. Newton*, 382 U.S. 296, 299 (1966)).  The crucial inquiry under the entwinement test is whether the "nominally private character" of the private entity "is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it."  *Id*. at 298.  The fact that a public entity has acted in compliance with a private entity's recommendations does not transform the private entity into a state actor.  *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179 (1988).  There is no indication in the Complaint that Ms. Kuss's actions were orchestrated and controlled by public officials or public institutions.

Moreover, even if Plaintiff had demonstrated Ms. Kuss could be considered a "state actor," he has not alleged that she violated his federal constitutional rights.  Conversion is a cause of action that arises, if at all, under state tort law.  It does not provide a basis for a §1983 claim.

Plaintiff also fails to state a claim against Ms. Kuss under Ohio law.  Ohio courts borrow from the Restatement (Second) of Torts to define conversion.  *See Hinkle v. Cornwell Quality Tool Co.*, 532 N.E.2d 772, 776 (Ohio. Ct. App.1987) (stating that "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel") (citing Restatement (Second) of Torts § 225A.).  To succeed in an action for conversion under Ohio law, Plaintiff must demonstrate: (1) the Defendant exercised dominion or

-17-

control over (2) Plaintiff's property, (3) wrongfully or in a manner inconsistent with Plaintiff's rights of ownership.  *Contorno v. Small*, No. 1:10 CV 165, 2011 WL 4499234, at *4-8  (N.D. Ohio Sept. 27, 2011); *Ohio Telephone Equipment & Sales, Inc. v. Hadler Realty Co.*, 24 Ohio App.3d 91, 93 (1985).  Conversion is an intentional tort in Ohio.  *Jasar Recycling, Inc. v. Major Max Mgmt. Corp.*, Case No. 4:08CV2830 2010, WL 395212, at *9 (N.D. Ohio Jan. 22, 2010) (citing *Price v. Austintown Local Sch. Dist. Bd. of Edn.*, 178 Ohio App.3d 256, 897 N.E.2d 700, 705 (Ohio App. 7 Dist.2008).

Here, Plaintiff includes very few allegations about Ms. Kuss's behavior.  He alleges she reported the cable box had been stolen, when, in fact, he had the cable service terminated.  There are no other allegations regarding Ms. Kuss's actions on June 1, 2010.  He does not indicate what property belonging only to him remained in the home on June 1, 2010, nor does he indicate that Ms. Kuss did anything to keep those property items from him.  There are no allegations in the Complaint which suggest Ms. Kuss acted intentionally in a way that caused conversion of his property.

**June 7, 2010 incident**

**Fourth Amendment, False arrest and Wrongful Imprisonment Claims**

Plaintiff includes three claims against Officers Atha and Dumont in Count Six of  his Complaint.  First, he claims the Officers violated his Fourth Amendment right to be free from unreasonable seizures when they arrested him for burglary on June 7, 2010.  He contends he provided utility bills in his name to demonstrate that he resided at the Edson Road  home.  He asserts he cannot, therefore, be arrested for burglary of his residence.  He also includes state law claims of false imprisonment and false arrest.

-18-

Plaintiff pled guilty to the charge of Burglary and was convicted of this offense on September 30, 2010. A person convicted of a crime may not raise claims in a civil rights action if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). The holding in *Heck* applies whether Plaintiff seeks injunctive, declaratory or monetary relief. *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401 at *1 (6th Cir. May 5, 1998).

Plaintiff raises claims in Count Six which, if found to have merit, would call into question the validity of his conviction. He claims his actions did not meet the criteria for a charge of burglary. He contends his seizure was unconstitutional and his confinement was, therefore, without a proper legal basis. If the Court were to find in Plaintiff's favor on these claims, it would make his conviction on Burglary charges suspect. Plaintiff cannot collaterally attack his conviction through a civil rights action. To bring this action, he must also allege his conviction was declared invalid by either an Ohio state court or a federal habeas corpus decision. Plaintiff did not appeal his conviction, and does not allege that his conviction was declared invalid by a federal habeas corpus decision. These claims therefore, must be dismissed.

**Malicious Prosecution**

Similarly, Plaintiff claims Officers Atha and Dumont engaged in malicious prosecution in violation of the Fourth Amendment. The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir.2006). The "tort of malicious prosecution" is

-19-

"entirely distinct" from that of false arrest, as the malicious-prosecution tort "remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Wallace v. Kato*, 549 U.S. 384, 390 (2007).

To succeed on a malicious prosecution claim under § 1983, when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove four elements.  First, the Plaintiff must show that a criminal prosecution was initiated against the Plaintiff and that the Defendant "ma[d]e, influence [d], or participate[d] in the decision to prosecute." *Sykes v. Anderson,* 625 F.3d 294, 308-310 (6th Cir. 2010); *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir.2007); *see also McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir.2005).  Second, because a § 1983 claim is premised on the violation of a constitutional right, the Plaintiff must show that there was a lack of probable cause for the criminal prosecution.  *Sykes,* 625 F.3d  at 308.  Third, the Plaintiff must show that, "as a consequence of a legal proceeding," the Plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.  *Id.*  Fourth, the criminal proceeding must have been resolved in the Plaintiff's favor.  *Heck*, 512 U.S. at 484 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

Plaintiff does not demonstrate all of these elements.  Although he was initially arrested by Officers Atha and Dumont, he was indicted by the grand jury on June 10, 2010, on charges of Aggravated Burglary, Felonious Assault, Kidnaping, and Disrupting Public Services.  The Officers did not make or participate in the decision to prosecute Plaintiff.  Plaintiff was prosecuted on the indictment by the grand jury.  *See State of Ohio v. Clements*, No. 2010 CR

-20-

367 (Portage Cty Ct. Comm Pl. indictment filed June 10, 2010).  Furthermore, Plaintiff pled

guilty to and was convicted on the Burglary and Felonious Assault charges.  The proceeding was

not resolved in his favor.  Plaintiff's malicious prosecution claim must be dismissed.

**Conspiracy**

Plaintiff claims in Count Thirteen that Officers Atha and Dumont conspired with Ms.

Kuss to have him arrested.  To the extent he intends to bring this claim under 42 U.S.C. §1983,

he cannot bring the claim against Ms. Kuss.  As a private citizen, she is not a "state actor" for

purposes of a §1983 action.

Moreover, Plaintiff has not alleged sufficient facts to support a conspiracy claim.  To

establish a conspiracy claim under §1983, Plaintiff must demonstrate that there was an

agreement between two or more persons to violate the constitutional rights of another by

unlawful action.  *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985).  There must be a single plan,

that the alleged co-conspirators shared in the general conspiratorial objective, and an overt act

must have been committed in furtherance of the conspiracy that caused injury to the

complainant.  *Id* at 943-44.  "It is well-settled that conspiracy claims must be pled with some

degree of specificity and that vague and conclusory allegations unsupported by material facts

will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534,

1538 (6th Cir.1987).

Plaintiff provides only conclusory allegations of a conspiracy.  He does not allege that

the Defendants engaged in unlawful action in connection with this arrest on June 7, 2010.  He

pled guilty to the charges for which he was arrested.  He makes a number of allegations that Ms.

Kuss provided false information to the police.  Even if this were true, there is no allegation from

which to infer that the Defendants acted in concert in providing the false information.  Plaintiff has not pled with any specificity that the Defendants had a single plan when Ms. Kuss telephoned them reporting a break in and assault.  The conspiracy claim is also dismissed.

## Temporary Protection Order

Plaintiff asserts four claims which pertain to the TPO obtained by Ms. Kuss on June 8, 2010.  In Count Ten, he claims the TPO was "legally infirm" when it was granted.  He contends that the charges against him for violating that TPO were a "malicious use of process."  In Count Eleven, Plaintiff claims a hearing was supposed to be held within ten days of the issuance of the *ex parte* order.  He claims the order remained in effect after the expiration of ten days, constituting a denial of due process.  He also alleges that his arrest for violating the protection order was therefore, an unreasonable seizure in violation of the Fourth Amendment.  In Count Twelve Plaintiff claims Sergeant McCarty and Officer Pettit engaged in malicious prosecution when they included false information on the police report.

### Malicious Use of Process

As an initial matter, it is not clear whether Plaintiff intended to assert a claim for malicious prosecution or for abuse of process.  The primary difference in a cause of action for abuse of process and one for malicious prosecution is whether the proceeding in question was initiated with or without probable cause.  *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.,* (1994), 68 Ohio St.3d 294, 297-98.  The key consideration in a malicious civil prosecution action is whether probable cause was present initially to bring the previous suit, whereas the key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action."  *Id.* at 300-301, fn. 6.  In this case,

-22-

Plaintiff asserts his claim for "malicious use of process" against Officers Atha and Dumont for arresting him for violating the terms of the TPO.

   If Plaintiff intended to assert a claim for malicious prosecution, he fails to state a claim upon which relief may be granted.  To state a claim for malicious prosecution, Plaintiff must demonstrate that: (1) the Defendants "ma[d]e, influence [d], or participate[d] in the decision to prosecute;" (2) there was a lack of probable cause for the criminal prosecution; (3) "as a consequence of a legal proceeding," the Plaintiff suffered a "deprivation of liberty"apart from the initial seizure; and (4)  the criminal proceeding against him was resolved in his favor. *Sykes,* 625 F.3d at 308-310.  Here, Plaintiff was indicted by the Portage County Grand Jury for violating the protection order and he was tried on this indictment.  The decision to prosecute Plaintiff was not made by Officers Atha and Dumont.  Furthermore, Plaintiff pled guilty to the charge of Menacing by Stalking in connection with violation of the protection order.  The criminal proceedings were not resolved in his favor.

   Similarly, Plaintiff fails to state a cause of action against Officers Atha and Dumont for abuse of process.  Under Ohio state law, the three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. *Schmidt v. Rossford Police Dept.*, No. 3:06 CV 1531, 2008 WL 4070953, at *10-11(N.D. Ohio Aug. 27, 2008).  In an abuse of process case, the improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself. *Palivoda v. Felix*, No. 2010–A–0017, 2011 WL 4790982, at *4  (Ohio App. 11 Dist. Oct. 7,

2011).  To make a case of abuse of process a claimant must show that one used process with an "ulterior motive."  *Id.*   Plaintiff must also allege Defendants committed a further act in the use of process which was not proper in the regular conduct of the proceeding.  *Id*.

In this case, Plaintiff bases his claim on the assertion that the TPO was obtained by a procedure that was legally infirm, rendering the TPO invalid and his arrest for violating the TPO flawed.  This conduct wholly occurred prior to the criminal proceeding and there was no evidence of intra-proceeding impropriety presented.  The facts of the present case adhere much more closely to the essential elements of a claim for malicious criminal prosecution in that Plaintiff challenges the officers' determination of probable cause.  There are no allegations suggesting they were participants in criminal proceedings or that they used those proceedings for an improper purpose.  There is no liability [for abuse of process] where the Defendant did nothing more than carry out the process to its authorized conclusion, even if they acted with bad intentions.  *Yaklevich*, L.P.A., 68 Ohio St.3d at 298.  Plaintiff fails to state a claim for abuse of process against Officer Atha and Dumont.

**Due Process**

Plaintiff next claims he was supposed to receive a hearing on the *ex parte* TPO within ten days of its issuance.  He indicates he did not have a hearing within that time frame, which he contends was a denial of due process.

Ms. Kuss applied for and was granted a TPO on June 8, 2010.  A full hearing was scheduled for June 16, 2010.  *See Kuss v. Clements*, 2012 PA 00023, (Ohio 11 App. Dist. filed Feb. 27, 2012).  On June 16, 2010, Plaintiff requested that the hearing be continued.  He was incarcerated pending criminal charges filed against him pertaining to the June 7, 2010 incident.

-24-

The continuance was granted until September 27, 2010, and the *ex parte* order remained in effect.  Plaintiff was also ordered to have no contact with Ms. Kuss in the criminal case pending against him, Case No. 2010 CR 0367.  A full hearing was conducted on September 27, 2010.  Neither Plaintiff nor his attorney appeared for the hearing.

Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner."  *See Loudermill*, 721 F.2d at 563.  The goal is to minimize the risk of erroneous deprivation of a protected liberty or property interest, to assure fairness in the decision-making process, and to assure that the individual affected is given the opportunity to participate in the process.  *Howard*, 82 F.3d 1343, 1349 -1353 (6th Cir. 1996).  Here, Plaintiff was offered a hearing within the ten day time limitation.  He asked for the proceeding to be continued.  He was later provided with a full hearing on the protection order and did not appear for the proceeding.  He was provided with notice and an opportunity to be heard.  He did not avail himself of those opportunities.  He now cannot claim that the Defendants denied him due process.

**Fourth Amendment**

Plaintiff further claims that the TPO was legally infirm at its inception, and expired when he was not given a hearing in ten days.  He claims that the officers lacked probable cause to arrest him for violating the terms of that protection order.

Plaintiff pled guilty to the charge of Menacing by Stalking in connection with the TPO violation.  If the TPO were now held to be invalid, it would call into question the validity of his conviction.  Plaintiff cannot assert this claim unless he can demonstrate that his conviction on this charge was overturned on appeal or set aside in a federal habeas corpus proceeding.  *Heck*,

512 U.S. at 484.  He has not alleged either of these situations has occurred, therefore, this claim cannot proceed.

### Malicious Prosecution

In Count Eleven, Plaintiff asserts a claim for Malicious Prosecution against Sergeant McCarty and Officer Pettit.  He alleges Sergeant McCarty falsely stated he had witnessed Plaintiff following Ms. Kuss after the TPO was in effect.  He contends Officer Pettit put this information into a police report.  As indicated above, Plaintiff pled guilty to the charge of Menacing by Stalking in connection with the TPO violation.  To the extent that this claim seeks to collaterally attack that plea, it cannot proceed  *Id.*

Moreover, Plaintiff fails to allege facts to satisfy the elements of a cause of action for malicious prosecution.  Again, Plaintiff was indicted by a grand jury.  Sergeant McCarty and Officer Pettit did not make the decision to prosecute Plaintiff.  Furthermore, he pled guilty to the charge.  The proceedings did not terminate in his favor.  His claims against McCarty and Pettit must be dismissed.

### Allegations against Brimfield Township

Finally, Plaintiff brings claims against Brimfield Township and the Brimfield Police Department for failure to train and failure to institute better policies.  The Court liberally construes these claims found in Counts Fourteen and Fifteen as an attempt to hold the Township and the Police Department liable for the actions of their employees.

As an initial matter, the Brimfield Police Department is not  *sui juris*, i.e., it is not a legal entity that can sue or be sued.  *See Nieves v. City of Cleveland*, 153 Fed. Appx. 349, 2005 WL 2033328 (6th Cir. Aug. 24, 2005); *Jones v. Ptl. D. Marcum*, No. C-3-00-335, 2002 WL 786572

(S.D. Ohio Mar. 11, 2002); *Williams v. Dayton Police Dept.*, 680 F. Supp. 1075 (S.D. Ohio 1987).  *See also Messer v. Rohrer*, No. C-3-95-270, 1997 WL 1764771, n. 9 (S.D. Ohio Mar. 31, 1997).  The police department is merely a sub-unit of the municipality it serves.  *Id.*  The claims against the Brimfield Police Department are, therefore, subsumed by Plaintiff's claims against Brimfield Township.

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability.  *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694.  A municipality can, therefore, be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers."  *Id.* at 690; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999).  Plaintiff does not allege that the individual employees acted in accordance with an official policy of the Township.  Rather, he suggests that the Township should have had policies in place to help govern the behavior of its employees in situations similar to his.  He does not elaborate on what type of policies he believes needed to be in place.  His vague and general reference to lack of better policies is the sort of *respondeat superior* claims which are not permitted in a § 1983 action.

Furthermore, Plaintiff attempts to bring claims against Brimfield Township for failure to train.  "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in

-27-

some other way directly participated in it.'" *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999) (quoting *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982)). There are no allegations in the Complaint that any lawmakers or government officials of Brimfield Township encouraged specific misconduct. Moreover, Plaintiff fails to provide any allegations concerning how the Township failed to train its employees and how that failure to train specifically resulted in a violated his constitutional rights. The claims against Brimfield Township and the Brimfield Township Police Department are dismissed.

## III. CONCLUSION

Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis* is granted. His claims found in Counts Six through Fifteen are dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2] This action shall proceed solely against Officer Atha, Officer Dumont, and Chief Oliver on Plaintiff's claims of Denial of Procedural Due Process in violation of the Fourteenth Amendment and Unreasonable Seizure of Property in violation of the Fourth Amendment in connection with the June 1, 2010 incident as set forth in Counts One through Five of the Complaint.

Furthermore, Plaintiff filed a Motion for Leave of Court to file a First Amended Complaint. (ECF No. 12.) He does not provide a copy of the proposed Amended Complaint. He indicates only that he wants to "more clearly assert Plaintiff's causes of action and to also

---

[2]   28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

include a new cause of action.  Plaintiff has learned relevant facts about the actions of some of the Defendants... ."  (ECF No. 12 at 2.)  The Court **grants** the Motion, in part, and **denies** it, in part.  Plaintiff may file an Amended Complaint, but only to the extent that it does not re-assert any claims which are dismissed in this Memorandum of Opinion and Order.  The Court will not revisit any of the claims which have already been dismissed.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

DATED: November 14, 2012