**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS JASON CLEMENTS, | ) | CASE NO.  1:12-cv-1180 |
| | ) | |
| Plaintiff, | ) | JUDGE BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| DAVID OLIVER, *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | Doc. No. 44 |

This case is before the magistrate judge on referral.  Before the court is the

motion of defendants, David Oliver ("Oliver"), William Atha ("Atha"), and Jerry Dumont

("Dumont"), to dismiss the complaint against them pursuant to Fed. R. Civ. P. 56(b).

Doc. No. 44.  Plaintiff, Thomas Jason Clements ("Clements") opposes defendants'

motion.  Doc. No. 65.  For the reasons given below, defendants' motion for summary

judgment should be **GRANTED** in its entirety and Clements' complaint dismissed as

without merit.

I

The court views the facts in the light most favorable to Clements, the party

opposing the motion.  Except where otherwise noted, Clements pleads or does not deny

the following facts.

Clements and his girlfriend, Cheri Kuss ("Kuss"), lived together in a house on

Edson Road in Brimfield Township ("the house").  Clements contends that the pair

jointly rented the house and that the rental was by way of a month to month oral agreement.  Defendants claim that Kuss rented the house by way of a signed lease.

On June 1, 2010, Kuss called the Brimfield Police Department ("the Department") and reported that Clements had illegally entered her home and stolen her cable box and a spare house key.  The Department dispatched Atha and Dumont to the scene. Clements alleges, and defendants do not deny, that Atha has known Kuss since high school.

When Atha and Dumont arrived at the house, Kuss was present in the house. While the officers were there, Clements arrived.  Atha and Dumont questioned Clements regarding Kuss's allegations.

Clements told the officers that he rented the house jointly with Kuss.  When the officers asked him to show them a lease to prove that he was entitled to occupy the house, Clements said that the lease by way of a month to month oral agreement, so there was no lease no show the officers.  According to Clements, he then showed the officers copies of his Ohio Edison Electric Company bill; his Dominion East Ohio Gas Company bill; and his telephone, internet, and cable bill from Time-Warner Cable Company; and three pieces of mail, all of which were solely in Clements' name at the Edson Road address.  Atha and Dumont deny that Clements showed them any bills. Clements also claims that he told the officers that he had removed the cable box because he was cancelling his cable subscription due to payment arrears.  He also said that the key Kuss alleged to be stolen was merely his own key to the house he rented. Finally, he told the officers that his belongings were in the house and in a shed on the property and that he wanted to retrieve those belongings.  While the officers were

2

inquiring about the dispute between Kuss and Clements, they told Clements that he could not enter the house and was to remain in the front yard.

When the officers questioned Kuss about Clements' statements, she stated that the cable subscription was in his name, "so that is fine."  Amended Complaint at 3. After hearing from both parties, Atha and Dumont ordered Clements to surrender the key to the house and to leave the house "and not to return under threat of arrest." Amended Complaint at 4.  They also told Clements that the dispute with Kuss was a civil matter that should be resolved in municipal or county court.  Opposition at 3.

The following day, on June 2, 2010, Clements met with Oliver, then chief of the Brimfield Township Police Department to complain of the actions of Atha and Dumont and to obtain permission to return to the house.  Oliver declined to give such permission and affirmed the acts of his officers.

Clements returned to the house on June 7, 2010.  Police were again summoned to the home at 1:00 a.m. on the report that a stabbing had occurred at the residence. According to Kuss, Clements had kicked in the door of the house armed with a knife and took her cell phone from her.  She said she struggled with him and he stabbed her in the arm.  She reported that he eventually allowed her to call the Brimfield Fire Department for medical attention.  The paramedics responded, accompanied by Atha and Dumont.  The officers arrested Clements and charged him with one count of aggravated burglary and one count of felonious assault.

On June 10, 2010, the grand jury indicted Clements on charges of aggravated burglary, felonious assault, kidnaping, and disrupting public services.  On June 8, 2010, Kuss obtained an *ex parte* temporary protection order ("TPO") against Clement.  On

3

June 28, 2010, Clements was arrested for violating the terms of that protection order. He contends that the protection order was not properly obtained and that he was unjustly arrested.  On July 1, 2010, the grand jury returned an indictment against him on one count of violating a protection order, two counts of menacing by stalking, and one count of intimidation.

On September 30, 2010 and in accordance with a plea agreement, Clements pleaded guilty to burglary and felonious assault in Case No. 2010 CR 0367 and to one count of menacing by stalking in Case No. 2010 CR 0409.  The court sentenced Clements to three years incarceration and three years of supervised release.  The court granted a motion for judicial release on June 12, 2012.

Clements filed this action on May 14, 2012.  Clements asserts the following causes of action pursuant to 42 U.S.C. § 1983 ("§ 1983"):  (a) deprivation of real property without due process of law against Atha (count 1), Dumont (count 2), and Oliver (count 3--ratification) through a "no-notice eviction" in violation of the Fourteenth Amendment; (b) unreasonable seizure of Clements' real property against Atha (count 4), Dumont (count 5), and Oliver (count 6--ratification) through a "no-notice eviction in violation of the Fourth Amendment; (c) unreasonable seizure of Clements' personal property against Atha (count 7), Dumont (count 8), and Oliver (count 9--ratification) through a "no-notice eviction" in violation of the Fourth Amendment; (d) unreasonable seizure of Clements' personal property against Atha (count 10) and Dumont (count 11--assisting) by ordering him to surrender his key to the house in violation of the Fourth Amendment; and (e) unreasonable seizure of Clements' person against Atha (count 12) and Dumont (count 13--assisting) for preventing Clements from entering the house and

4

requiring him to remain in the front yard in violation of the Fourth Amendment. Defendants now move for summary judgment on Clements' causes of action.

II

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56. The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *See Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995).  The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ," *id.*, or by any other evidentiary material admissible at trial.  *Horta v. *Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, 10A, § 2721 (1998).  Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 888-89 (1990).

The trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476

5

(6th Cir. 1989). That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)). The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment. *Reeves v. Fox Television Network*, 983 F.Supp. 703, 709 (N.D. Ohio 1997).

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion . . . ." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 369 F.2d 648 (6th Cir. 1966). In addition, the Court "does not weigh the evidence or make credibility determinations." *Id.* This includes taking the nonmoving party's uncontradicted allegations as true and giving the benefit of the doubt to the nonmoving party's assertions when they conflict with those of the movant. *Bishop v. Wood*, 426 U.S. 341 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir. 1974). However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251.

III

Atha, Dumont, and Oliver assert that they did not violate Clements' Fourth or

6

Fourteenth Amendment rights when Atha and Dumont ordered Clements to leave the house and not return, demanded that he surrender the house key, and ordered him to remain in the front yard while they investigated Kuss's accusations.  They also claim qualified immunity against Clements' causes of action.  Clements contests these assertions and denies that the defendants are entitled to qualified immunity.

*A. The doctrine of qualified Immunity*

"[W]here an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'"  *Harlow v. Fitzgerald,* 457 U.S. 800, 819 (1982) (quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967)). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell,* 472 U.S. at 526.

Whether government officials are entitled to qualified immunity involves two questions: (1) whether, considering the undisputed facts in a light most favorable to the party injured, a statutory or constitutional right has been violated, and (2) whether that right was clearly established at the time of the alleged violation.  *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).  For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable [government official] would understand that what he is doing violates that right." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) (quoting *Harris v. City of Circleville,* 583 F.3d 356, 366-67 (6th Cir. 2009)).  The burden is on the plaintiff to demonstrate that a right was clearly established at the time

7

of the alleged violation.  *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).  A court may consider the prongs of the two-part test in whatever order is appropriate in light of the issues before the court.  *Colvin*, 605 F.3d at 290; *Jones v. Byrnes,* 585 F.3d 971, 975 (6th Cir. 2009).

If a government official raises the defense of qualified immunity, the plaintiff has the burden of showing that the relevant constitutional right is clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).  However, because qualified immunity is an affirmative defense, the defendant has the burden of establishing that the challenged act was objectively reasonable in light of the law existing at the time.  *Id.*

B.      *Clements' first through sixth causes of action*

Clements' first through sixth causes of action allege that the defendants seized his real property without due process, in violation of the Fourteenth Amendment, and seized his real property "unreasonably," in violation of the Fourth Amendment.

When police officers evict and individual from the individual's residence, such an eviction may implicate both the Fourth and Fourteenth Amendment protections.  *See, e.g.*, *Soldal v. Cook County*, 506 U.S. 56, 72 (1992); *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002).  An eviction is a "seizure" within the meaning of the Fourth Amendment, as it constitutes "some meaningful interference with an individual's possessory interests in . . . property."  *Soldal v. Cook County*, 506 U.S. at 72; *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  A non-judicial eviction also implicates the Fourteenth Amendment right to due process and generally requires notice and a right to be heard prior to the eviction.  *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972); *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002).

8

An eviction triggers the protections of the Fourth and Fourteenth Amendments because of the individual's protected possessory interest in the individual's home. *Thomas*, 304 F.3d at 576.  Such possessory interests are not created by the Constitution but "stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  "Under Ohio law, a lease is a conveyance of an estate in real property for a limited term, subject to conditions, in consideration of rent." *In re DWE Screw Products, Inc.*, 157 B.R. 326, 330 (N.D. Ohio 1983) (citing *Jones v. Keck,* 79 Ohio App. 549, 74 N.E.2d 644 (1946)).  A leasehold pursuant to state law is a property interest protected by the Fourth Amendment.  *See Thomas*, 304 F.3d at 573-74.  Clements' only claim to ownership or lease of real property in this case is in his allegation that he and Kuss rented the house and grounds by way of an oral, month-to-month lease.  Thus, Clements' first through sixth causes of action assert that he was deprived of use of the house and grounds which he leased on Edson Road in Brimfield Township in violation of the Fourth and Fourteenth Amendments.

This argument fails because Clements' burglary conviction, which negates his claim to any ownership interest in the house, bars him from asserting that he had an oral month-to-month lease in June of 2010.[1]  A person convicted of a crime may not

---

[1]  The court also notes that defendants have produced a lease which is ostensibly the one by which Kuss rented the house.  Clements contends that this lease is fraudulent and bases this contention, in large part, upon his allegation that the telephone number listed for Kuss on the lease, 330-216-07XX, was not issued by Revol Wireless until after the signing of the lease.  In support of this allegation, Clements presents documents from Revol Wireless showing that 330-216-07XX was not activated for Kuss until June 2, 2010. Defendants argue that Clements has not properly authenticated this document.  Clements, however, was permitted to amend his opposition and submits an affidavit of the custodian of the Revol Wireless records.  *See* Opposition; Exh. 2; Affidavit of Custodian, Business Records.  However, even if 330-216-07XX was not activated until June 2, 2010, that does

raise claims in a civil rights action if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside.  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).  On September 30, 2010, Clements pleaded guilty to burglary occurring on June 7, 2010 of the house on Edson Road.  Under Ohio law, "trespass" is a necessary element of burglary.  *See* Ohio Rev. Code § 2911.12(A)(1)-(4).  "Trespass," as defined by Ohio statute, necessarily entails entering, remaining on, or being on the land or premises *of another*.  *See* Ohio Rev. Code § 2911.21(A)(1)-(4) (emphasis added).  Thus, when Clements pleaded guilty to burglary, he necessarily admitted that he trespassed on the property or premises of another and was not permitted to enter the premises without authorization when he entered the house on Edson Road.  A judgment on the merits of Clements' claims in his first through sixth causes of action would necessarily affect the validity of his state conviction for burglary because it would imply that Clements was authorized to enter the house.  As this is inconsistent with his conviction for burglary, Clements may not assert the claims in his first through sixth causes of action in this case.

For the reasons given above, Clements' first through sixth grounds for relief against Atha, Dumont, and Oliver are without merit and should be dismissed.

_____

not prove the written lease to be fraudulent, since that number could have been activated for Kuss by another carrier prior to its activation by Revol Wireless.  In any case, the court declines to consider the written lease presented by defendants in this case because defendants have failed to authenticate it properly, having attempted to introduce it merely by way of Oliver's affidavit that the proffered document is what Sherley Grund, the landlord, presented to him as the lease.

C.      *Clements seventh through ninth causes of action*

Clements' seventh and eighth causes of action allege that defendants Atha and Dumont unreasonably seized his personal property by ordering him away from the house, in violation of the Fourth Amendment.  Clements' ninth cause of action alleges that Oliver unreasonably seized Clements' personal property by ratifying his officers' orders to Clement to stay away from the house and denying Clements permission to enter the house.

A seizure occurs, within the meaning of the Fourth Amendment, when "there is some meaningful interference with an individual's possessory interests in . . . property." *Soldal* , 506 U.S. at 61 (1992).  For a seizure to be actionable, however, the seizure must be objectively unreasonable.  *See Soldal*, 506 U.S. at 71.  The Fourth Amendment protects citizens from only *unreasonable* government seizures. *United States v. Sharpe,* 470 U.S. 675, 682 (1985).  Determining whether a seizure is reasonable requires a "careful balancing of governmental and private interests." *Soldal*, 506 U.S. at 71.

In the present case, according to the facts pleaded by Clements, the officers arriving at the scene upon Kuss's complaint found (1) Kuss in possession of the house and complaining of a break-in and theft; (2) Clements, arriving later upon the scene, claiming to be a lessee of the house and owner of unspecified property within the house and within an adjacent shed; (3) bills in Clements' name at the house address; (4) Kuss's denial that Clements was a lessee of the house; and (5) an apparent domestic dispute[2] between Kuss and Clements.[3]  Clements argues that it was unreasonable and

---

[2]    In using the phrase "domestic dispute," the court only means to imply a disagreement between two persons who were co-habiting.  It does not necessarily imply

in violation of clearly established law for Atha and Dumont not to allow him to go through the house and take whatever property he alleged to be his.

In a case not entirely on point but nevertheless instructive, the Sixth Circuit found contrary to Clements' argument.  In *Hensley v. Gassman*, 693 F.3d 681 (6th Cir. 2012), police assisted a private individual, Gassman, in repossessing Hensley's Buick, despite Hensley's denials that Gassman had a legal right to the vehicle.  In summarizing the reasonableness of the officers' actions under the Fourth Amendment, the court wrote as follows:

> (1) the repossession was a private civil matter; (2) Gassman claimed that he was authorized to repossess the Buick; (3) [Hensley] disputed Gassman's authority to take the Buick and gave a specific reason why the repossession should not occur; and (4) the Deputies lacked any evidence substantiating Gassman's claim of authority to repossess the Buick.  Given these undisputed facts, a reasonable trier of fact could certainly conclude that the seizure was unreasonable.

*Hensley*, 693 F.3d at 692.  *Hensley* teaches that, in a purely civil matter and in the absence of a court order, it is not reasonable for an officer who has no evidence of ownership to property independent of the assertions of the claimants to assist one claimant in retrieving the property from the possession of the other.

In the present case, Clements offered no evidence to the officers on the scene that he owned any particular item in the house.  For Atha and Dumont to have simply taken Clements' word regarding what he owned and allowing him to retrieve those items

---

a disagreement between co-owners of the habitation.

[3]  In addition, the police had known Kuss and Clements for many years, knew that they were both married to other people despite a long-term but intermittent relationship with one another, and knew that Clements lived with his wife at another address.  *See* Affidavit of Oliver, Motion, Exh. 1, p. 1; Deposition of Oliver, Opposition, Exh. 14, pp. 11-14.

12

under their auspices would not have been reasonable, given *Hensley*.  Instead, Atha and Dumont told Clements that the dispute was a civil matter that should be taken to the courts.  That was entirely reasonable advice for resolving what was, at base, a factual dispute over rights to property.

Moreover, because Atha and Dumont have raised the defense of qualified immunity, Clements must demonstrate that his right to any personal property in the house *under these circumstances* was clearly established at the time of the alleged violation.  Clements offers no support for the proposition that preventing him from retrieving his property under these circumstances violated law that was clearly established on June 1, 2010.  Instead, he relies exclusively on arguments premised on the assumption that he had a demonstrable tenancy in the house.  As already discussed, Clements is barred by making such arguments because they are inconsistent with his conviction for burglary.  Consequently, Clements fails to carry his burden of showing that his right to collect his personal property from the house was clearly established at the time of the alleged violation.  Clements fails to defeat, therefore, Atha's and Dumont's assertion of the defense of qualified immunity.

With respect to Oliver, Clements alleges that Oliver unreasonably seized Clements' personal property by ratifying Atha's and Dumont's orders to Clement to stay away from the house and by denying Clements permission to enter the house.  Oliver, too, asserts the defense of qualified immunity.  Because Clements does not show that preventing him from retrieving his personal property under the prevailing circumstances violated law that was clearly established on June 1, 2010, he does not defeat Oliver's assertion of the defense of qualified immunity.

13

For the reasons given above, Clements' seventh through ninth grounds for relief against Atha, Dumont, and Oliver are without merit and should be dismissed.

D.      *Clements' tenth and eleventh causes of action*

Clements' tenth and eleventh causes of action allege that Atha and Dumont unreasonably seized his personal property by ordering him to surrender his key to the house in violation of the Fourth Amendment.  Atha and Dumont deny that requiring Clement to surrender his key to the house was an unreasonable seizure that violated the Fourth Amendment and assert the defense of qualified immunity against Clements' causes of action.

As already explained, Clements is barred by from asserting that he was authorized to enter the house because that would be inconsistent with his conviction for burglary.  Thus, he had no legal right to enter the house without Kuss's permission. Clements makes no effort to demonstrate that requiring him to surrender the key to someone else's house, a house that he had been ordered not to enter, violated law that was clearly established on June 1, 2010.  Clements fails to defeat, therefore, Atha's and Dumont's assertion of the defense of qualified immunity, and his tenth and eleventh grounds for relief should be dismissed as without merit.

E.      *Clements' twelfth and thirteenth causes of action*

Clements' twelfth and thirteenth causes of action allege that Atha and Dumont unreasonably seized his person by preventing him from entering the house and ordering him to remain in the front yard in violation of the Fourth Amendment.  In particular, Clements alleges that Atha and Dumont "unlawfully interfered with Mr. Clements' liberty while at [the house] by not permitting Mr. Clements to enter his home but rather

14

ordering Mr. Clements to stay in the front yard before the no-notice eviction on Mr. Clements from [the house] in Brimfield Township was executed." Amended Complaint at 28.

Again, Clements is barred from asserting that he was authorized to enter the house. Consequently, the officers' order preventing Clements from entering the house without Kuss's permission did not deprive him of any liberty interest and, therefore, did not violate his rights under the Fourth Amendment.

This leaves the question of whether ordering Clements to remain in the front yard violated Clements' Fourth Amendment rights. Atha and Dumont went to the house as a result of Kuss's complaint that Clements had illegally entered her home and stolen her cable box and a spare house key. According to Clements, they ordered him to remain in the front yard while they investigated Kuss's complaint.

The Fourth Amendment recognizes two types of seizures of the person: arrests and investigatory stops. *United States v. Jeter*, ___ F.3d ___, 2013 WL 3455497, at *3 (6th Cir. July 10, 2013). An officer may initiate an investigatory stop upon "reasonable suspicion." *Id.* "Reasonable suspicion exists where the officer can articulate specific, particularized facts that amount to more than a 'hunch' that criminal activity may be afoot." *Id.* "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983).

In the present case, Kuss complained of a break-in and theft and named Clements as the suspect. Atha and Dumont, therefore, clearly had specific, particularized facts that criminal activity may be afoot and that Clements was involved in

15

that activity.  Consequently, they had reasonable suspicion to stop and temporarily detain Clements during their investigation of Kuss's complaint.  Upon their determination that the dispute between Kuss and Clements could not be resolved outside of court, they release Clements from investigatory detention, with the order that he not enter Kuss's house.

Clements makes no effort to demonstrate that requiring him to remain in the front yard while Atha and Dumont investigated Kuss's complaint infringed in any way on his Fourth Amendment rights pursuant to law that was clearly established on June 1, 2010. Clements fails to defeat, therefore, Atha's and Dumont's assertion of the defense of qualified immunity, and his twelfth and thirteenth grounds for relief should be dismissed as without merit.

III

For the reasons given above, defendants' motion for summary judgment should be **GRANTED** in its entirety and Clements' petition dismissed as without merit.


Date:  July 17, 2013                                  s/ *Nancy A. Vecchiarelli*
                                                      United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

16