**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS JASON CLEMENTS, | ) | CASE NO.  1:12-cv-1180 |
| | ) | |
| Plaintiff, | ) | JUDGE BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| DAVID OLIVER, *et al.*, | ) | **SUPPLEMENTAL REPORT AND** |
| | ) | **RECOMMENDATION** |
| Defendants. | ) | Doc. No. 44 |

This case is before the magistrate judge on referral.  The court has allowed plaintiff, Thomas Jason Clements ("Clements"), to supplement his opposition to the motion of motion of defendants, David Oliver ("Oliver"), William Atha ("Atha"), and Jerry Dumont ("Dumont"), to dismiss the complaint against them pursuant to Fed. R. Civ. P. 56(b).  Doc. No. 44.  The court adopts by reference the statement of facts and summary of law contained in its Report and Recommendation of July 17, 2013.

Clements objects to the court's recommendation to dismiss Clements' first through sixth causes of action against Atha, Dumont, and Oliver, alleging that the defendants seized his real property without due process, in violation of the Fourteenth Amendment, and seized his real property "unreasonably," in violation of the Fourth Amendment.  Clements contends that the court incorrectly found that granting him relief on any of these causes of action would call into question his conviction for burglary.

Clements offers evidence and argument to support his contention that on June 1, 2010 he was renting the house on Edson Road ("the house") and that he abandoned that lease between June 1, 2010 and June 7, 2010, the date on which he burgled the house.  In particular, Clements offers evidence that he stopped the utilities to the house on or before June 4, 2010.  In stopping the utilities and abandoning the property, Clements asserts, he gave up the lease of the house.  According to Clements, because he rented the house on June 1, 2010 but had abandoned the lease before June 7, 2010, his guilty plea to burglarizing the house on June 7, 2010 does not prevent him from arguing that he was a lessee of the house on June 1, 2010.  Clements contends, therefore, that the court should not have recommended dismissal of his first through sixth causes of action against Atha, Dumont, and Oliver because granting him relief on those causes of action would not call into question his burglary conviction.

Clements errs.  Clements fails to explain how his termination of utilities could have had any effect on a month-to-month lease of the house.  If Clements had a month-to-month lease on the house on June 1, 2010, then he still would have had a month-to-month lease on the house on June 7, 2010, regardless of the status of the utilities at either time.  Clements cites *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 304 (6th Cir. 2005), for the proposition that merely vacating the premises ended the lease.  Clements errs, because he misreads *Radavansky*:

> In this case, Radvansky was a tenant at the Redwood Drive residence pursuant to an oral agreement with Rosemark whereby Radvansky paid $450 per month.  Under Ohio law, this agreement would be recognized as a periodic monthly tenancy which could be terminated by either side with notice of termination.  If the landlord gives proper notice, but the tenant refuses to vacate, the landlord may bring a forcible detainer action in court to remove the tenant.  Ohio law expressly prohibits self-help evictions by landlords.  As the Ohio courts

> have stated, "[c]riminal trespass statutes do not afford a substitute for other adequate civil remedies." Absent a court order, the only way to end a disputed tenancy is if the tenant vacates the apartment of his own accord. Thus, the question of Radvansky's criminal liability under Ohio's burglary statute turns on whether he was a current or former tenant of the Redwood Drive residence on the night of May 15. Viewing the evidence presented in the light most favorable to Radvansky, we conclude that Radvansky had paid most of the rent for the month of May and was using the Redwood Drive residence at the time to house his personal possessions, clothing, and furniture. Therefore, because Radvansky was a current tenant and had a right to enter and occupy the premises, he could not be found liable for either criminal trespass or burglary.

*Radavansky*, 395 F.3d at 304 (citations omitted). *Radavansky* stands for the proposition that when a landlord has given notice to end the lease and the tenant disputes the termination of the lease, the lease may be ended only by court order or if the tenant vacates the premises. The court in *Radavansky* clearly states that in the absence of a dispute between landlord and tenant, a periodic month to month lease may be terminated by giving notice of termination.

In Clements' case, he does not allege that there was a dispute with the landlord over termination of the lease nor does he allege that he gave notice to the landlord that he wished to terminate the lease. Thus, Clements did not terminate the lease when he moved out of the house and stopped the utilities. As Clements provides no relevant evidence that his status as lessee changed between June 1, 2010 and June 7, 2010, his guilty plea to burglarizing the house on June 7, 2010 prevents him from arguing that he was a lessee of the house on either June 7, 2010 or June 1, 2010.

Moreover, even if Clements' argument regarding termination of a lease at the house had merit, Clements' argument would not alter the court's recommendation that Clements' complaint be dismissed. Atha, Dumont, and Oliver assert qualified immunity, and Clements fails to demonstrate that they are not entitled to such immunity.

Whether government officials are entitled to qualified immunity involves two questions: (1) whether, considering the undisputed facts in a light most favorable to the party injured, a statutory or constitutional right has been violated, and (2) whether that right was clearly established at the time of the alleged violation.  *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).  A plaintiff seeking to defeat an assertion of qualified immunity must demonstrate *both* that a statutory right was violated and that the right was clearly established at the time.  *Crockett v. Cumberland Coll.*, 316 F.3d 571, 583 (6th Cir.2003).  In determining whether a right was clearly established at the time of the alleged violation, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

At the time Atha and Dumont denied Clements access to the house, Clements pleads that the officers found the following situation: (1) Kuss was in possession of the house and had called the police complaining of a break-in and theft; (2) Clements, arriving later upon the scene, claimed to be a lessee of the house and owner of unspecified property within the house and within an adjacent shed; (3) the officers were shown utility bills in Clements' name at the house address; (4) Kuss denied that Clements was a lessee of the house; and (5) Kuss and Clements were engaged in a dispute.  The officers ordered Clements away from the house and told him to bring his claims to an ownership interest in the house to the civil court.

Under these circumstances, no reasonable officer could have believed that denying Clements access to the house was unlawful.  Police at the scene of a

4

disturbance are in no position to sort out the legal rights of the various parties to the disturbance.  That is the job of the courts, and Atha and Dumont properly told Clements to avail himself of the court to assert his rights.  Clements' alleged display of utility bills addressed to him at the house merely demonstrated that he willingly housed his "girlfriend."  It did not necessarily demonstrate that Clements was a resident of that house.[1]

In its earlier Report and Recommendation, the court cited *Hensley v. Gassman*, 693 F.3d 681 (6th Cir. 2012), for the proposition that, in a purely civil matter and in the absence of a court order, it is not reasonable for an officer who has no evidence of ownership to property independent of the assertions of the claimants to assist one claimant in retrieving personal property from the possession of the other.  Although *Hensley* was concerned with personal property, it applies equally to an interest in real property.  That is, in a purely civil matter and in the absence of a court order, it is not reasonable for an officer who has no evidence of a leasehold in real property independent of the assertions of the claimants to assist one claimant enforcing an alleged leasehold when the other is in possession of the disputed property.  As Kuss was in possession of the house and Clements offered no clear evidence that he was a lessee of the property, Atha and Dumont's decision to order Clements from the property and resolve the issue of ownership in the courts was entirely reasonable.

Clement does not demonstrate that *in the situation that allegedly confronted Atha*

---

[1] This is particularly true in this case, as the police were aware that Clements and his wife maintained a residence in another part of town.  *See* Deposition of David Oliver, Modified Opposition, Doc. No. 65, pp. 13-14.

*and Dumont* the officers should have known that their conduct was unreasonable. Having failed to carry his burden of proof, Atha and Dumont are entitled to qualified immunity even if Clements' guilty plea to burglarizing the house on June 7, 2010 did not preclude him from arguing that he was a lessee of the house on June 1, 2010.

To defeat qualified immunity to Oliver, Clements must demonstrate that his affirmation of the acts of Atha and Dumont in the circumstances they faced was unreasonable.  Clements makes no effort to do this.  Consequently, Clements fails to carry his burden of proving that Oliver is not entitled to qualified immunity.  Thus, Oliver, too, is entitled to immunity against Clements' causes of action.

In sum, granting Clements relief on any of his first six causes of action would impermissibly call into question his conviction for burglary.  In addition, Atha, Dumont, and Oliver are entitled to qualified immunity.  For these reasons, defendants' motion for summary judgment should be **GRANTED** as to Clements' first through sixth causes of action.


Date:  July 31, 2013                                    s/ *Nancy A. Vecchiarelli*
                                                        United States Magistrate Judge


**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**